**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

RIMMA TUREVSKY,                          :
                                         :
                    Plaintiff,           :    CIVIL ACTION
                                         :
        v.                               :    NO. 10-cv-2911
                                         :
FIXTUREONE CORP., LINDA IACONELLI,       :
KEN SCHUTZ, AND LAURENCE LARSSON,        :
                                         :
                    Defendants.

## MEMORANDUM & ORDER

**Joyner, C. J.**                                    **October 18, 2012**

Before this Court are Plaintiff's Motion for Summary
Judgment (Doc. No. 90), Defendant Iaconelli's Motion for Summary
Judgment (Doc. No. 91), and Plaintiff's Response thereto (Doc.
No. 94). For the reasons set forth below, the Court grants
Plaintiff's motion in part and denies it in part, and grants
Defendant's motion in part and denies it in part.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Rimma Turevsky ("Plaintiff" or "Ms. Turevsky") is the
alleged victim of discrimination on the basis of sex and
pregnancy.[1]  She worked for FixtureOne ("Defendant" or
"FixtureOne") from December of 2005 until she was terminated in
November of 2007.  In June of 2007, Plaintiff notified her
employer that she was pregnant.  On October 30, 2007, she

---

[1] Plaintiff also alleged discrimination based on national origin in the
Amended Complaint.  Plaintiff has withdrawn those claims.  (Doc. No. 58).

1

informed Ken Schutz ("Defendant" or "Mr. Schutz"), the CEO of FixtureOne, Laurence Larsson ("Defendant" or "Mr. Larsson"), the CFO of FixtureOne, and Linda Iaconelli ("Defendant" or "Ms. Iaconelli"), Plaintiff's supervisor, that she would begin her maternity leave in thirty days. On November 11, 2007, the Plaintiff further informed Mr. Schutz and Mr. Larsson that she would begin her maternity leave on December 7, 2007, and return to work twelve weeks later on March 3, 2008. On November 16, 2007, the Plaintiff was verbally notified that she was being laid off.

The record contains many conflicting statements about the reasons for the Plaintiff's termination. In March of 2007, Mr. Schutz and Mr. Larsson discussed over email Ms. Turevsky's role in the company, suggesting that she was unproductive and underutilized. In September of 2007, Mr. Schutz sent an email to the Director of Operations, Anita Fridman, informing her that Ms. Turevsky had mixed up deposits and as a result several checks bounced, and suggesting that they should discuss her continued employment. In the beginning of October of 2007, Mr. Schutz suggested to Mr. Larsson that the Plaintiff should be terminated after she left a sensitive document on the copy machine. On November 11, 2007, Mr. Schutz emailed Mr. Larsson after receiving the Plaintiff's email notifying them of her FMLA dates, stating "I was going to suggest that Rimma be laid off this week as she

is not needed any longer to do payroll," and asking whether this would be legal. Finally, in Plaintiff's Notice of Determination of Unemployment Compensation, the findings of fact stated: "The Employer indicates she [Turevsky] was terminated due to a previous back injury and her current condition was unable to perform her job functions."

At some point after Plaintiff's termination, she received a number of emails from Ms. Fridman, her former co-worker at FixtureOne. Ms. Fridman gave the Plaintiff a jump drive with information on it, and told the Plaintiff that the information would be useful for her, without telling her where she obtained the information. The Plaintiff downloaded the contents of the jump drive onto her own computer and returned it to Ms. Fridman.[2]

Ms. Turevsky filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") on April 10, 2008. This complaint was dual filed with the Equal Employment Opportunity Commission (EEOC). On June 4, 2009, the PHRC notified Plaintiff that, one year having passed since the filing of the complaint, she could now bring suit in the Court of Common Pleas for the alleged violations of the Pennsylvania Human Relations Act ("PHRA"). Plaintiff chose not to file suit at that time, and the PHRC continued to handle the complaint, with an eye toward a hearing to adjudicate the merits. Before the hearing date, however, the

---

[2] Ms. Fridman has since returned to Israel. She has not sat for any depositions in this case, nor is she a party.

Plaintiff notified the PHRC that she had filed suit in federal court.  The PHRC dismissed the complaint without a final adjudication.

Plaintiff's present federal suit was filed on June 17, 2010 (Doc. No. 1), with an amended complaint filed on August 30, 2010 (Doc. No. 17).  The case is before this Court on federal-question jurisdiction, for claims arising under Title VII and the Family and Medical Leave Act ("FMLA"), and supplemental jurisdiction, for claims arising under the PHRA.  Defendants Schutz and FixtureOne Corporation filed counterclaims against the Plaintiff for civil conspiracy, misappropriation, and conversion.  (Doc. No. 22).  On December 23, 2010, this Court denied Defendants' Motion to Dismiss the Plaintiff's Amended Complaint, and the case proceeded to discovery.

A number of motions were filed and issues raised before the Court in the time between the denial of the Motion to Dismiss and the present Motions for Summary Judgment.  The Plaintiff withdrew Counts III and IV of her Amended Complaint.  (Doc. No. 58).  On April 2, 2012, this Court ordered that the Plaintiff was to be sanctioned for her non-responsiveness to a compelled mental examination by prohibiting her from supporting her claims for mental anguish and emotional distress.  (Doc. No. 79).  On April 11, 2012, this Court ordered that after Defendants Schutz and Larsson failed to respond to the Plaintiff's Requests for

Admissions, those Requests for Admission were deemed admitted against FixtureOne, Schutz, and Larsson, except for one request, which was a conclusion of law.[3]  (Doc. No. 85).

The Plaintiff now moves for summary judgment on the two counterclaims against her and on the FMLA interference and notification violation claims in Count VII of her Amended Complaint.  (Doc. No. 90).  Defendant Iaconelli has also moved for summary judgment due to lack of evidence, lack of witnesses and substance.  (Doc. No. 91).

## II.  STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party; a factual dispute is material only if it might affect the outcome of the suit under governing law.  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  Bowers v. Nat'l Collegiate Athletic Ass'n, 475

---

[3] Defendant Schutz has moved for this Court to reconsider this order. By separate order, this Court has denied that motion for the reasons stated therein.

F.3d 524, 535 (3d Cir. 2007); <u>Matsushita Elec. Indus. Co. v.</u> <u>Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). However, the non-moving party cannot rely on "bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." <u>Podobnik v. U.S. Postal Serv.</u>, 409 F.3d 584, 594 (3d Cir. 2005). When the non-moving party is the plaintiff, she must "make a showing sufficient to establish the existence of [every] element essential to [her] case and on which [she] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### III.  DISCUSSION

### A.  Plaintiff's Motion for Partial Summary Judgment

The Plaintiff has moved for partial summary judgment on Count VII of the Amended Complaint, and the two counterclaims against her. Specifically, Plaintiff seeks summary judgment on the FMLA interference claim and the claim for a violation of 29 C.F.R. § 825.300(b) in Count VII, the civil conspiracy claim against her in Counterclaim Count I, and the misappropriation and conversion claims against her in Counterclaim Count II. Plaintiff has submitted a brief in support of her Motion for Summary Judgment and attached exhibits. However, the Defendants have not responded to the Plaintiff's Motion.

#### 1.  FMLA Claims

The Plaintiff seeks summary judgment on her claim that her termination interfered with her FMLA rights. She argues that by terminating her "at the precise time she made Defendants aware of her intent to use FMLA time, Defendants interfered with Mr. [sic] Turevsky's access to benefits and protections under the FMLA." (Pl.'s Br. in Supp. of Mot. for Summ. J., at 10-11, Doc. No. 90). To support this argument, the Plaintiff presents evidence from Defendant Schutz's deposition testimony that if the Plaintiff had not been terminated, FMLA leave would have been awarded. (Id. at 11). The Plaintiff further argues that a legitimate business purpose cannot justify an interference claim under the FMLA; therefore, she argues, the only pertinent issues to her interference claim are whether she was entitled to benefits under the FMLA, and whether those benefits were denied. (Id. at 12).

Defendant Schutz stated in his deposition testimony that the Plaintiff "wasn't entitled to it [FMLA leave] because she was no longer an employee." (Ex. T to Pl.'s Mot. for Summ. J., at 188, Doc. No. 90). Basically, Mr. Schutz believed that Ms. Turevsky's FMLA benefits did not accrue because she was laid off prior to the time those benefits were to accrue. (Id.). Mr. Schutz further stated that although he knew she was pregnant and was going to take FMLA, that did not factor into his decision to lay her off. (Id. at 189).

Where a plaintiff alleges that an employer has interfered with an employee's rights under the FMLA, "the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." Sommer v. The Vanguard Group, 461 F.2d 397, 399 (3d Cir. 2006). Contrary to Mr. Schutz's assertions, terminating an employee for a valid FMLA request can not only constitute retaliation, but also interference. The Third Circuit has held that "firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009).

The Plaintiff relies upon Callison v. City of Philadelphia, 430 F.3d 117, 119-20 (3d Cir. 2005), to support her argument that a legitimate business purpose is not relevant to an interference claim. However, the Court finds the Third Circuit's recent decision in Lichtenstein v. University of Pittsburgh Medical Center, 691 F.3d 294 (3d Cir. 2012), instructive on this issue. There, the Third Circuit explained: "The FMLA, however, 'does not provide employees with a right against termination for any reason other than interference with rights under the FMLA.'" Id. at 312 (quoting Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 403 (3d Cir. 2007)). The employer, the Third Circuit concluded, could defeat the plaintiff's claim if it could demonstrate that

the plaintiff was terminated "for reasons 'unrelated to' her exercise of rights." Id.

Lichtenstein suggests that the Defendants can defeat the Plaintiff's interference claim by demonstrating that she was terminated prior to her FMLA leave for some reason aside from her invocation of the FMLA. Although the Defendants have not responded to Plaintiff's Motion for Summary Judgment, the evidence contains several stated reasons for the Plaintiff's termination. These reasons include seasonal layoffs, lack of work, poor performance and a back injury. While putting forward a number of different reasons along with the suspect timing of her termination[4] might indicate that the real reason for the termination was her FMLA claim, such a determination is best left to a jury. Whether the Plaintiff was terminated for a reason "unrelated to" her exercise of FMLA rights is a material issue of fact that precludes summary judgment on the interference claim.

The Court now turns to Plaintiff's claim that she is entitled to summary judgment on her claim that by not notifying her of her FMLA eligibility within five days, the Defendants

---

[4] The Plaintiff was terminated only five days after suggesting the dates for her twelve weeks of FMLA maternity leave. The Plaintiff also argues that the Defendants' contacting an attorney in the intervening time to inquire into the legality of terminating her suggests that her termination was for the invocation of FMLA rights. Although no Defendant has raised this issue, the Court feels obligated to note that the correspondence with the attorney in question, Walter Flamm, is likely protected by attorney-client privilege and work product doctrine. Therefore, the Court has not relied upon these contacts between the Defendants and their attorneys in resolving the motion for summary judgment.

interfered with her FMLA rights in violation of 29 C.F.R.

§ 825.300(b).  Plaintiff states that she told the Defendants of

her leave on October 30, 2007, and despite this notification, she

was never advised of her FMLA rights and eligibility.[5]  (Pl.'s

Br. in Supp. of Mot. for Summ. J., at 14-15, Doc. No. 90).

The Department of Labor has promulgated regulations

implementing the FMLA.  29 C.F.R. § 825.300(b) provides: "(1)

When an employee requests FMLA leave, or when the employer

acquires knowledge that an employee's leave may be for an FMLA -

qualifying reason, the employer must notify the employee of the

employee's eligibility to take FMLA leave within five business

days, absent extenuating circumstances."  Violations of the FMLA

or Department of Labor regulations "constitute interfering with,

restraining, or denying the exercise of rights provided by the

Act."  29 C.F.R. § 825.220(b).

The Third Circuit has concluded that under the FMLA

regulations, an eligible employee can "show an interference with

his right to leave under the FMLA, within the meaning of 29

U.S.C. § 2615(a)(1), if he is able to establish that this failure

---

[5] The Plaintiff points out that due to the admission of Plaintiff's
Requests for Admission against Defendants FixtureOne, Schutz, and Larsson, the
fact that these Defendants did not notify the Plaintiff as to her eligibility
within five days of being informed of her need for leave is admitted and not
in dispute.  (Pl.'s Br. in Supp. of Mot. for Summ. J., at 14-15, Doc. No. 90).
Defendant Iaconelli responded to the Plaintiff's Requests for Admission, and
denied this request for admission.  It appears that the Plaintiff is only
moving for Summary Judgment on this issue with respect to FixtureOne, Schutz
and Larsson, not Iaconelli.  (Id.).  However, Plaintiff's motion for summary
judgment on this issue is denied for the reasons stated below.

to advise rendered him unable to exercise that right in a meaningful way, thereby causing injury." Conoshenti v. Public Service Elec. & Gas Co., 365 F.3d 135, 143 (3d Cir. 2004). In Conoshenti, the Third Circuit found that the District Court's denial of the plaintiff's motion for summary judgment was warranted because the record contained no evidence regarding the alternatives that would have been available to the plaintiff had he been properly advised of his rights. Id. at 145. In other words, the plaintiff had not shown that the failure to advise him of his FMLA rights prejudiced him or caused him any injury. Similarly, although the Court accepts Defendants FixtureOne, Schutz, and Larsson's admission that the Plaintiff was not advised of her FMLA rights within five days, the Plaintiff has not shown how this failure to advise or notify rendered her "unable to exercise that right in a meaningful way," as required by Conoshenti. Id. at 143. Because the Plaintiff has not presented evidence regarding alternatives she would have known about or decisions she would have made differently had she been advised of her rights, the Court cannot grant the Plaintiff's Motion for Summary Judgment on this issue.

Therefore, the Court denies Plaintiff's Motion for Summary Judgment with respect to her FMLA interference claims in Count VII.

## 2.  Misappropriation and Conversion Counterclaims

Counterclaim plaintiffs FixtureOne and Schutz asserted a claim for misappropriation and conversion in connection with the allegedly stolen emails that Ms. Turevsky obtained from Ms. Fridman. Ms. Turevsky, here, counterclaim defendant, has moved for summary judgment on this counterclaim. FixtureOne and Mr. Schutz have failed to respond to Ms. Turevsky's motion for summary judgment. The Court views the record in the light most favorable to the counterclaim plaintiffs, the non-moving parties, Bowers, 475 F.3d at 535; however, the counterclaim plaintiffs must still make a showing that sufficiently establishes every element essential to the case on which they would bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

The common law cause of action for misappropriation of property, the most relevant misappropriation cause of action here, refers to "[t]he application of another's property or money dishonestly to one's own use." Westport Ins. Corp. v. Hanft & Knight P.C., 523 F. Supp. 2d 444, 460 (M.D. Pa. 2007) (citing Black's Law Dictionary (8th ed. 2004)). In Pennsylvania, the tort of misappropriation requires that: (1) the plaintiff "has made a substantial investment of time, effort and money into creating the thing misappropriated such that the court can characterize that 'thing' as a kind of property right," (2) the defendant "has appropriated the 'thing' at little or no cost, such that the court can characterize defendant's own actions as

'reaping where it has not sown,'" and (3) the defendant has "injured plaintiff by the misappropriation." <u>Sorbee Int'l Ltd. v. Chubb Custom Ins. Co.</u>, 735 A.2d 712, 716 (Pa. Super. Ct. 1999).

Under this standard for misappropriation, counterclaim plaintiffs have not made a showing to establish every element of the cause of action. They have not shown that a substantial investment of time, effort, and money went into creating those emails. Ms. Turevsky has shown that she did not take the emails; rather, they were given to her by Ms. Fridman. Therefore, Ms. Turevsky cannot be said to be "reaping where [she] has not sown." <u>Sorbee</u>, 735 A.2d at 716. Finally, the counterclaim plaintiffs have not shown an injury that they have suffered as a result of Ms. Turevsky's obtaining the emails.[6] Therefore, the counterclaim plaintiffs' claim for misappropriation cannot survive the summary judgment motion.

Under Pennsylvania law, conversion constitutes "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification."

---

[6] The only conceivable injury that the Court can think up is the injury in having these emails considered by the Court during the present litigation. Having examined the contents of the emails in question, it appears that they contain discoverable material even in the absence of their disclosure by Ms. Fridman. The only exception is those emails about the Defendants' contact with a lawyer prior to Ms. Turevsky's termination, which, as previously noted, the Court is not considering. Therefore, having the Court consider these emails cannot constitute an injury.

McKeeman v. Corestates Bank, N.A., 751 A.2d 655, 659 n.3 (Pa. Super. Ct. 2000). Counterclaim plaintiffs have not shown that Ms. Fridman's disclosure of the emails to Ms. Turevsky deprived them of or interfered with their right to use and possess the emails. In fact, Mr. Schutz acknowledged in his deposition that the theft of the emails did not permanently deprive the company of them. (Ex. T to Pl.'s Mot. for Summ. J., at 53, Doc. No. 90). As such, the counterclaim plaintiffs have clearly not made a showing that establishes every element of conversion, and the claim cannot survive a motion for summary judgment.

In sum, the counterclaim plaintiffs have not made a sufficient evidentiary showing to establish their claims at the summary judgment stage. Therefore, the Court grants summary judgment on both the misappropriation and conversion claims in favor of Ms. Turevsky.

### 3. Civil Conspiracy Counterclaim

Counterclaim plaintiffs FixtureOne and Schutz have also asserted a claim for civil conspiracy. Ms. Turevsky has moved for summary judgment on this counterclaim.

"Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort." Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000).

14

Therefore, if a court concludes that no tort was committed, there can be no civil conspiracy to commit that tort.  See GMH Associates, Inc. v. Prudential Realty Group, 752 A.2d 889, 905 (Pa. Super. Ct. 2000).  The counterclaim plaintiffs have failed to support their claims for misappropriation and conversion.  As no tort was committed, Ms. Turevsky cannot be liable for civil conspiracy.  Therefore, the Court grants Ms. Turevsky's motion for summary judgment on the civil conspiracy counterclaim.

## B.  Defendant Iaconelli's Motion for Summary Judgment

Defendant Iaconelli has also filed a Motion for Summary Judgment.  She termed her motion as "Based on the Grounds of Lack of Evidence, Lack of Witnesses and Substance."  (Def. Iaconelli's Mot. for Summ. J., Doc. No. 91).  In her Motion for Summary Judgment, Ms. Iaconelli generally asserts factual conclusions and arguments, without citing any legal reasons for the dismissal of the counts.  She does, however, attach some affidavits to the motion.  Ms. Iaconelli is acting pro se.  And pro se litigants are held to "less stringent standards" than counsel.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  Therefore, the Court "will apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name."  Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).[7]

---

[7] The Plaintiff argues that Ms. Iaconelli's Motion for Summary Judgment should be denied because she did not comply with Local Rule 7.1(c) by filing a "brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion."  E.D. Pa. Loc. R. 7.1(c).  However, Ms.

Ms. Iaconelli does not mention on which charges she is moving for summary judgment. However, as Counts III and IV of Plaintiff's Amended Complaint have been withdrawn and Counts I and V are against FixtureOne only, the Court will presume she is moving for summary judgment on Counts II, VI and VII.

### 1. Count II: Pregnancy Discrimination under the PHRA

Count II alleges pregnancy discrimination under the PHRA. First of all, there must be a basis for liability for Ms. Iaconelli, who was merely an employee of FixtureOne and Ms. Turevsky's supervisor. Unlike Title VII, the PHRA contemplates liability beyond merely "employers." Section 955(e) of the PHRA makes it illegal for "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice." 43 P.S. § 955(e). Ms. Iaconelli is a person or employee under this section; therefore, she can be liable if she aided, abetted, incited, compelled or coerced the cited discriminatory behavior.

"The proper analysis under Title VII and the [PHRA] is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001). The Pregnancy Discrimination Act

Iaconelli's motion contains sufficient argument that the Court can discern her contentions, and as a *pro se* litigant, the Court will apply the law regardless.

16

amended Title VII to clarify that "sex" under Title VII includes pregnancy. 42 U.S.C. § 2000e(k). Establishing a prima facie case for pregnancy discrimination differs slightly from establishing one for sex discrimination. Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 365 (3d Cir. 2008).

To establish a prima facie case of pregnancy discrimination, (1) the "plaintiff must adduce evidence that she was pregnant, and, that the employer knew it," (2) the plaintiff must be qualified for the job, (3) the plaintiff must have suffered an adverse employment decision, and (4) the plaintiff must show "some nexus between her pregnancy and the adverse employment action" to raise an inference of discrimination. Id. After this, "the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action." Id. at 370. If the defendant meets this burden, "the plaintiff must then show that the legitimate reasons offered by the defendant are merely a pretext for discrimination." Id. "Put another way, to avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a fact-finder reasonably to infer that each of the employer's proffered nondiscriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action." Id.

The Plaintiff has clearly established a prima facie case. It is undisputed that she was pregnant and all Defendants knew of her pregnancy. She has presented evidence that she was qualified for the job in question, and her termination constitutes an adverse employment decision. The temporal proximity between informing the Defendants of her anticipated maternity leave and her termination raises an inference of discrimination. In her Motion for Summary Judgment, Ms. Iaconelli cites seasonal layoffs and lack of experience and knowledge as the reasons for her layoff. (Def. Iaconelli's Mot. for Summ. J., at 2, Doc. No. 91). However, the Plaintiff has submitted evidence that sufficiently contradicts these legitimate, nondiscriminatory reasons. In particular, the timing of Plaintiff's termination combined with the conflicting reasons for her termination creates a genuine issue of material fact as to the reason for her termination. In other words, a jury, viewing the evidence as a whole, could find that the conflicting legitimate, nondiscriminatory reasons for Ms. Turevsky's termination are merely pretext. Finally, there is sufficient evidence of Ms. Iaconelli's participation in Ms. Turevsky's termination such that liability is conceivable under section 955(e) of the PHRA. A jury should decide from the evidence submitted whether Ms. Iaconelli aided or abetted the discriminatory action. Therefore, the Court denies Ms. Iaconelli's Motion for Summary Judgment on Count II.

## 2. Count VI: Sex Discrimination under the PHRA

Count VI alleges sex discrimination under the PHRA. Specifically, from the language of the Amended Complaint, it appears that this count contains a hostile work environment claim. (Am. Compl., at ¶ 87, Doc. No. 17).

To succeed on a hostile work environment claim, a plaintiff must prove: (1) she suffered intentional discrimination on the basis of race or sex, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected her, (4) the discrimination would have detrimentally affected a reasonable person in like circumstances, and (5) a basis for employer liability, such as *respondeat superior* exists. Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999). In determining whether an environment is sufficiently hostile or abusive to support a claim of discrimination, the Court examines the totality of the circumstances and factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998). Finally, Ms. Iaconelli can be liable for the hostile work environment under the PHRA if she aided, abetted, incited, compelled or coerced the behavior that led to the hostile work environment. 43 P.S. § 955(e).

19

In her Amended Complaint, Ms. Turevsky alleges that her workplace duties were "constantly interrupted by the pervasive sexual environment and Defendant Schutz's orders to mend his relationships, leave work to chase after Ms. Friedman [sic], and buy gifts and flowers for Defendant's many paramours," and that he "required only female employees to mend his relationship problems, buy gifts for his paramours, and perform demeaning tasks such as walking his dog and clean up after his dog." (Am. Compl., at ¶¶ 83-84, Doc. No. 17). The Amended Complaint further alleges that Ms. Iaconelli aided, abetted and conspired to achieve the objectives of these discriminatory acts. (Id. at ¶ 87).

To survive a motion to dismiss, a plaintiff must "make a showing sufficient to establish the existence of [every] element essential to [her] case and on which [she] will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Here, the Plaintiff has submitted almost no evidence on her hostile work environment claim. The only evidence the Plaintiff has submitted to support the allegations is Mr. Schutz's admission to having sexual relations with several employees. (Ex. D to Pl.'s Mot. for Summ. J., at 44, Doc. No. 90). Beyond that, the Plaintiff has put forth no evidence to suggest that she suffered severe or pervasive discrimination on the basis of her sex that detrimentally affected her, and would have detrimentally affected

a reasonable person.  Therefore, as the Plaintiff has failed to carry her burden to establish the existence of every element of the prima facie case for a hostile work environment claim, the Court will grant Defendant Iaconelli's Motion for Summary Judgment with respect to Count VI.

### 3.  Interference and Retaliation Claims under the FMLA

Count VII of Plaintiff's Amended Complaint alleges interference and retaliation claims under the FMLA.

With respect to the interference claims, for the same reasons the Court did not grant the Plaintiff's motion for summary judgment on these claims, discussed in section A.1, *supra*, the Court will deny summary judgment for Defendant Iaconelli on these claims.  There are genuine issues of material fact as to whether the Plaintiff's termination was "unrelated to" her exercise of FMLA rights.  Furthermore, "an individual supervisor working for an employer may be liable as an employer under the FMLA."  Haybarger v. Lawrence County Adult Prob. & Parole, 667 F.3d 408, 415 (3d Cir. 2012).  Therefore, the Court cannot grant Ms. Iaconelli's Motion for Summary Judgment with respect to the FMLA interference claims.

The Court now turns to Plaintiff's retaliation claim under the FMLA.  To establish a prima facie case for retaliation under the FMLA, a plaintiff must show "(1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse

decision was causally related to his leave." Conoshenti, 364
F.3d at 146; see also Erdman, 582 F.3d at 509 (interpreting the
Conoshenti requirement that an employee "take" FMLA leave to
include invocation of FMLA rights).  After the plaintiff has made
this prima facie case, the burden shifts to the defendant to
articulate a legitimate, nondiscriminatory reason for the adverse
employment action.  See McDonnell Douglas Corp. v. Green, 411
U.S. 792, 802 (1973) ("The burden then must shift to the employer
to articulate some legitimate, nondiscriminatory reason for the
employee's rejection."); Capilli v. Whitesell Const. Co., 271 F.
App'x 261, 265 (3d Cir. 2008) ("Our analysis of Capilli's [FMLA]
retaliation claim follows the burden-shifting framework set forth
by the Supreme Court in McDonnell Douglas Corp. v. Green.").  If
the defendant carries that burden, the burden shifts back to the
plaintiff to prove that the legitimate reasons were not the
defendant's "true reasons, but were a pretext for
discrimination."  Capilli, 271 F. App'x at 265 (quoting Marzano
v. Computer Science Corp., Inc., 91 F.3d 497, 503 (3d Cir.
1996)).

The Plaintiff has put forth evidence to satisfy the
requirements for a prima facie case.  As previously discussed,
firing an employee for a valid FMLA request can constitute
retaliation as well as interference.  Erdman, 582 F.3d at 509.
There is a genuine issue of material fact as to whether the

adverse decision was causally related to the leave, as the temporal proximity between the leave request and the termination would suggest.

In her Motion for Summary Judgment, Ms. Iaconelli suggests a number of reasons for the Plaintiff's termination, and questions the Plaintiff's motives in filing the lawsuit. However, as discussed previously with respect to other claims, the evidence of conflicting reasons for Ms. Turevsky's termination and the temporal proximity of the termination to her maternity leave request create a genuine issue of material fact as to whether the reasons put forth are merely pretext.

Ms. Iaconelli also argues that in her position at FixtureOne, she had no control over benefits or layoffs. However, Ms. Iaconelli was Ms. Turevsky's supervisor, and was copied on a number of emails regarding Ms. Turevsky's leave and employment issues. As the FMLA contemplates liability for supervisors, <u>Haybarger</u>, 667 F.3d at 415, a jury could find Ms. Iaconelli responsible. Therefore, the Court denies Ms. Iaconelli's Motion for Summary Judgment with respect to the FMLA retaliation claim in Count VII.

## IV.  CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's Motion for Summary Judgment with respect to Count VII of the Amended Complaint, but grants it with respect to Counterclaim

Counts I and II.  The Court denies Defendant Iaconelli's Motion for Summary Judgment with respect to Counts II and VII of the Amended Complaint, but grants it with respect to Count VI.  A separate order follows.